EMILY A. MAC MASTER, ISB NO. 6449
MAC MASTER LAW PLLC
1925 N. Locust Grove Road
Meridian, Idaho 83646
Telephone:  (208) 608-2235
emily@macmasterlaw.com
emacmaster07@gmail.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMIE WIGGINS,<br><br>        Plaintiff,<br><br>vs.<br><br>IDAHO STATE UNIVERSITY, a public university, the IDAHO STATE UNIVERSITY BOARD OF TRUSTEES aka the IDAHO STATE BOARD OF EDUCATION, an executive department of the State of Idaho, and KEVIN SATTERLEE, and PAULINE THIROS, in their official and individual capacities, and DOES 1–50,<br><br>        Defendants. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Jamie Wiggins, by and through her undersigned counsel of record, hereby brings this Complaint and Demand for Jury Trial against Defendants the Idaho State University, the Idaho State University Board of Trustees aka the Idaho State Board of Education, Kevin Satterlee, Pauline Thiros, and Does 1–50, (hereinafter, collectively "Defendants") and states and alleges as follows:

**COMPLAINT AND DEMAND FOR JURY TRIAL- 1**

## NATURE OF ACTION

1.      This lawsuit arises out of adverse employment actions taken by Defendants against Plaintiff Jamie Wiggins for offering to adopt a baby boy born following an adult college student's unintended pregnancy. In heartbreaking circumstances, the baby boy was born with an unknown terminal health condition which led to his death less than three months later. It is within these circumstances that Defendants violated Plaintiff Jamie Wiggins' rights protected by federal and/or Idaho state law. As a result, she seeks all available compensatory economic and non-economic damages, equitable relief, and recovery of attorneys' fees, costs, and interest.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff Jamie Wiggins (hereinafter, "Plaintiff") was an employee of Defendant Idaho State University at all times relevant herein. Plaintiff is a citizen who currently resides in Benton County, Oregon, although Plaintiff's domicile remains in Williamson County, Texas.

3.      Defendant Idaho State University (hereinafter, the "Defendant University") is a public university and a body politic and corporate that may be sued in its own name. *See* Idaho Code §§ 33-3001, 33-3003.

4.      Defendant Idaho State Board of Trustees aka Idaho State Board of Education (hereinafter, the "Defendant Board") is a department of the State of Idaho. The Defendant Board is responsible for the general supervision, government and control of the Defendant University. *See* Idaho Const., Art. IX, § 2; Idaho Code §§ 33-101, 33-3003.

5.      Defendant Kevin Satterlee (hereinafter, "Defendant Satterlee") is and was, at all times relevant hereto, President of the Defendant University. On information and belief, Defendant Satterlee is domiciled in the State of Idaho and is a current citizen of Bannock County, Idaho.

6.      Defendant Pauline Thiros (hereinafter, "Defendant Thiros") is and was, at all times relevant hereto, the Athletic Director of the Defendant University. On information and belief,

Defendant Thiros is domiciled in the State of Idaho and is a current citizen of Bannock County, Idaho.

## PARTIES, JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 with supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, and/or has jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity among Plaintiff and each of the Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because all defendants reside within in the judicial district for the state of Idaho and/or 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in the judicial district for the state of Idaho.

## GENERAL ALLEGATIONS

9. While attending college at Fresno State University in Fresno, California, Plaintiff was a pitcher for the Fresno State Bulldogs, an NCAA Division I fastpitch softball team.

10. During her college NCAA sports career, Plaintiff received multiple recognitions for fastpitch softball accomplishments include being named All-American with first-team honors, being named the Western Athletic Conference ("WAC") Pitcher of the Year, and being named a WAC Female Athlete of the Year. During and after college, Plaintiff also played on Team USA for multiple years during which her team won a gold medal at the 2006 World Championships.

11. After completing her collegiate career, Plaintiff was a first-round pick in the National Pro Fastpitch League's senior draft, won the NCAA Top VIII Award, and was even named in or about 2009 to the ESPN Rise All-Decade Softball Team.

12. Plaintiff married Mark Gregory Wiggins (hereinafter, "Greg Wiggins") in 2011. Following their marriage, Plaintiff took time off from pursuing her sports career to focus on family,

COMPLAINT AND DEMAND FOR JURY TRIAL- 3

before returning later to collegiate fastpitch softball in a coaching role at a college in Abilene, Texas.

13. In or about the summer of 2021, Plaintiff received a job offer to be the Assistant Women's Softball Coach for the Defendant University's NCAA Division I Softball Team.

14. In a letter from Defendant Thiros to Plaintiff, dated on or about July 16, 2021, Defendant Thiros offered Plaintiff employment in a non-classified appointment to the position of Assistant Women's Softball Coach in the Athletic Department of the Defendant University.

15. Plaintiff's non-classified appointment as the Assistant Women's Softball Coach was confirmed in a written, signed Athletics Assistant Coach Single-Year Contract between the Defendant University and Plaintiff, which had a term of 10 months effective July 21, 2021 that was renewable for additional years pursuant to its terms (hereinafter, the "Employment Contract").

16. No terms in the July 16, 2021 appointment letter or the Employment Contract expressly prohibited Plaintiff from adopting a baby of any current or a former student.

17. In connection with accepting employment with the Defendant University, Plaintiff was required to move her family from Abilene, Texas to Pocatello, Idaho, where she and her husband Greg Wiggins purchased a family home.

18. As the Defendant University's Assistant Women's Softball Coach, Plaintiff dedicated herself to the duties of her position including, for example, recruiting and coaching the team's pitchers for the 2022 season, instructing players attending the Defendant University's sports camps, and otherwise assisting in directing the softball program.

19. Defendants did not provide Plaintiff specific training to direct her regarding job expectations in the event of a student athlete's unintended pregnancy.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 4**

20. Near the end of the 2022 softball season, on or about April 30, 2022 a student and member of the Defendant University's Softball Team informed Plaintiff that she suspected one of her teammates might be pregnant but was hiding or otherwise not admitting the pregnancy.

21. Out of concern for the player's health and safety, Plaintiff shared this reported information with the Softball Team's trainer Santiago Segura Barron, the Defendant University's head trainer Dustin Enslinger, and the Softball Team Coach Andrew Rich.

22. On or about the next day, May 1, 2022, Plaintiff then met with the student athlete over coffee and, in conversation, asked if she was pregnant. But the player denied being pregnant.

23. Promptly after this meeting on or about May 1, 2022, Plaintiff informed the Defendant University's Associate Athletic Director Robyn Sharp about the reported pregnancy and her conversation in which the student athlete denied being pregnant. Associate Athletic Director Sharp supervised Coach Rich and reported to Defendant Thiros.

24. On or about May 7, 2022, Plaintiff received an emotional phone call from this same student athlete and another friend, who was also a member of the Defendant University's Women's Softball Team. They disclosed to Plaintiff that this student, who had initially denied being pregnant, was in fact pregnant and in need of help, and the pregnant student asked for Plaintiff's help. In response, Plaintiff agreed to meet with them that same day.

25. Soon after on that same day, Plaintiff met with these two team members. The pregnant athlete shared medical and other information about her unintended pregnancy, from which it appeared that she could be in the third trimester of pregnancy. She indicated that she needed help but did not want others to find out, and Plaintiff offered to help her find assistance.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 5**

26. On or about Monday, May 9, 2022, upon receiving assistance offered by Plaintiff, the pregnant athlete was medically assessed and underwent an ultrasound at a local hospital, Portneuf Medical Center in Pocatello, Idaho.

27. After this medical appointment, Plaintiff updated the Softball Team's trainer that same day to keep the pregnant athlete safe including in regard to an upcoming softball tournament.

28. Later that same day, on or about May 9, 2022, medical providers advised that the baby needed to be delivered for health reasons and that labor needed to be induced. That evening, the pregnant athlete returned to Portneuf Medical Center where she met with her physician and was admitted into the hospital. Plaintiff offered support including to get her settled at the hospital.

29. The next morning, on or about May 10, 2022, Plaintiff returned to the hospital to offer further support. After Plaintiff arrived, the student athlete asked Plaintiff first, and then asked Plaintiff and her husband Greg Wiggins together in a phone call, to adopt the baby that she was going to deliver. In response, they agreed to offer to adopt the baby.

30. On or about May 10, 2022, the student athlete then gave birth to a baby boy.

31. Unfortunately, the baby's health at birth required him to be transferred to the hospital's Neonatal Intensive Care Unit ("NICU") for medical assessment, care and/or treatment.

32. That day, after the birth, a hospital social worker or other service provider came to the birth mother's hospital room to discuss options for the baby and her. Plaintiff left the room, to allow the birth mother to have an entirely private conversation with this provider about her options.

33. The birth mother had rights to make her own private decisions regarding her future and the future of her child, including by adoptive placement, in accordance with public policy interests expressly referenced in Idaho law. *See* e.g., Idaho Code § 16-1501A.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 6**

34. On information and belief, the birth mother was offered and received professional counseling and support from social workers, nurses, and/or other professional treatment providers at the hospital about adoption and other options available to her.

35. Asking Plaintiff and her husband Greg Wiggins to adopt the baby allowed the birth mother, who was unmarried and dealing with an unintended pregnancy and birth, a say in choosing the baby's adoptive parents and offered her a chance for her baby to be adopted into an established, stable and loving two-parent family.

36. Plaintiff and her husband Greg Wiggins wanted the birth mother to share her pregnancy and the birth with her parents and Plaintiff encouraged her to do so on multiple occasions. But if neither of the birth parents were prepared to parent him and their families did not adopt him, the Wiggins were willing and ready to pursue adoption proceedings for the baby.

37. The decision of Plaintiff and her husband Greg Wiggins to offer to adopt the baby was an exercise of their Christian faith. Plaintiff's religious beliefs dictate the care of orphans in their distress when called upon, with a recognition of harsh consequences for not doing so. *See, e.g.,* Exodus 22:22–23; James 1:27. Plaintiff's faith includes a firm belief that God put her family in Pocatello so that they would be there to care for the birth mother and then love the child whom the birth mother was not prepared to keep, in their time of need. Plaintiff and her husband looked to their faith in God to counsel them and, in so doing, reached the decision to offer to adopt the baby if neither of his birth parents or their families stepped in to parent him.

38. Soon after the baby's birth, on or about that same day, Plaintiff informed Associate Athletic Director Sharp about the birth mother's wishes for Plaintiff and Greg Wiggins to adopt the child and their decision to offer an adoption. In this conversation, Associate Athletic Director Sharp did not direct Plaintiff to withdraw this offer.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 7**

39. Following his birth, the baby remained in the hospital NICU. Plaintiff and her husband Greg Wiggins regularly visited the NICU to hold and feed the baby, and during this time, they developed a loving, intimate parental bond with the child that grew over time.

40. On or about May 14, 2022, Defendant Thiros called Plaintiff. In this call, Plaintiff shared with Defendant Thiros the student athlete's unintended pregnancy, Plaintiff's reports to the trainers, Coach Rich, and Associate Athletic Director Sharp, and the birth of the baby boy. Plaintiff also shared the birth mother's wishes for Plaintiff and her husband Greg Wiggins to adopt the baby and their agreement in response to offer this option to her.

41. On understanding and belief, Defendant Thiros never contacted the birth mother to discuss the situation or responded to any effort by the birth mother to reach out to her.

42. On or about May 16, 2022, Defendant Thiros asked Plaintiff and her husband Greg Wiggins to attend a meeting with the Defendant University's Dean of Student Services Craig Chatriand and her, informing Plaintiff that they needed to get a plan in place for the birth mother to tell her parents about the pregnancy and birth.

43. On or about May 17, 2022, Plaintiff and her husband Greg Wiggins attended a meeting with Dean of Student Services Chatriand, Defendant Thiros. In this meeting, the Dean and/or Defendant Thiros solicited the Wiggins for information about the birth mother to help them approach her and get her to tell her parents about the pregnancy and birth. The Dean insisted that he could contact her parents directly if he wanted to do so. These efforts concerned the Wiggins.

44. While the Wiggins hoped that the birth mother would tell her parents, they respected her autonomy to make this difficult decision on her own without interference or coercion by Dean Chatriand or Defendant Thiros. Thus, in this meeting on or about May 17, 2022, the Wiggins responded that if Dean Chatriand and Defendant Thiros wanted information about the

birth mother, they should talk to her directly. While Defendant Thiros instructed Plaintiff that she needed to be on the Defendant University's "team," Plaintiff responded by objecting and refusing to further disclose personal information about the birth mother. The meeting ended in this dispute.

45. After the meeting on or about May 17, 2022 ended, outside of the meeting room, Defendant Thiros informed Plaintiff and her husband Greg Wiggins that Defendant Thiros had asked the Defendant University's President if she could fire Plaintiff but that the President had told her no. Defendant Satterlee was the President at this time. Defendant Thiros also asked the Wiggins whether there was anyone else who could take the baby and/or whether they had a "clone," a sister or anyone else who could adopt the baby.

46. The next day, on or about May 18, 2022, Coach Rich met with Plaintiff for an end-of-year meeting to evaluate the successes of the 2022 softball season. They began planning for the 2023 season including, without limitation, by planning for the recruitment of players, and they discussed Plaintiff's role on the coaching staff for the upcoming year in which they would continue to work together.

47. However, in a meeting between Defendant Thiros and Plaintiff held on or about May 25, 2022, Defendant Thiros removed Plaintiff from her job duties immediately. Defendant Thiros also informed Plaintiff that her employment with the Defendant University would not be continued, stating that her Employment Contract would not be renewed. Defendant Thiros informed Plaintiff that the reason for these employment actions was Plaintiff's offer of adoption.

48. On information and belief, Defendant Satterlee made and/or participated in the decision to terminate Plaintiff's employment and/or refuse to renew her Employment Contract, and/or he ratified one or both of these decisions.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 9**

49. Defendants did not provide Plaintiff 60 days advance notice of the non-renewal of her Employment Contract.

50. On or about June 3, 2022, Coach Rich told one or more members of the Defendant University's Softball Team that Plaintiff had resigned her position when this was not true. On information and belief, Defendant Thiros directed, participated in, and/or ratified Coach Rich's sharing of this false information with the Softball Team.

51. Plaintiff's loss of employment with the Defendant University required Plaintiff to put her family's home in Pocatello up for sale and move her family back to Texas.

52. As a result, Plaintiff and her husband Greg Wiggins traveled between Texas and Idaho to be near the baby while he remained in the NICU and his health continued to deteriorate.

53. In a tragic turn of events, the baby was diagnosed with a terminal medical condition.

54. Greg Wiggins was with the baby boy when the baby died in the NICU on or about July 28, 2022, less than three months after his birth. Nobody from the Defendant University's administration, student services, counseling services, or athletic department came to the NICU to sit with Mr. Wiggins and the baby that day.

55. As a result of Defendants' actions, Plaintiff has incurred severe emotional distress resulting in physical manifestations, including, for example, anxiety both day and night and sleeplessness, requiring her to undergo medical and mental health treatment.

## FIRST CLAIM FOR RELIEF
### (Violation of the Idaho Protection of Public Employees Act)
### (Against All Defendants)

56. The allegations contained in paragraphs 1 through 55 of this Complaint are incorporated herein by reference, as if set forth again in full.

57. Plaintiff engaged in or intended to engage in one or more protective activities as defined by the Idaho Protection of Public Employees Act at Idaho Code § 6-2104, including one or more of the following:

    a. Plaintiff participated in an inquiry by one or more Defendants about the birth mother's pregnancy and the baby's birth, during which Plaintiff communicated in good faith concerns about a suspected violation of a law, rule, or regulation adopted under the laws of Idaho and/or the United States regarding a birth mother's rights to autonomy and privacy in making decisions about her future and the future of her child without interference by Defendants; and/or

    b. Plaintiff objected to and/or refused to carry out directives from one or more Defendants that Plaintiff reasonably believed violated a law or a rule or regulation adopted under the authority of the laws of Idaho or the United States governing a birth mother's rights to autonomy and privacy in making decisions about her future and the future of her child without interference by Defendants.

    c. Plaintiff objected to and/or refused to withdraw her offer with her husband Greg Wiggins to adopt the baby boy if his birth parents could not parent him and their families did not adopt him, despite pressure from one or more Defendants explicitly or implicitly directing that she do so or she would face an adverse employment action.

58. Plaintiff suffered an adverse action by one or more of the Defendants, by the immediate removal of her from job duties on or about May 25, 2022, the non-renewal of her Employment Contract as Assistant Women's Softball Coach for the 2022–2023 school year, and/or the termination of her employment.

59. There is a causal connection between one or more of Plaintiff's protected activities and one or more of the Defendants' adverse actions against Plaintiff.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 11**

60. As a result, Plaintiff has incurred severe emotional distress and reputational and economic damages in an amount to be proven at a trial in this action.

61. Plaintiff seeks all available relief including actual damages, lost wages and benefits, compensatory damages, costs and attorney's fees, as well as appropriate declaratory and injunctive relief.

**SECOND CLAIM FOR RELIEF**
**(Violation of the Idaho Free Exercise of Religion Act)**
**(Against All Defendants)**

62. The allegations contained in paragraphs 1 through 61 of this Complaint are incorporated herein by reference, as if set forth again in full.

63. Plaintiff has a fundamental right to the free exercise of her religion pursuant to Idaho Free Exercise of Religion Act, at title 73, chapter 4, of the Idaho Code.

64. Plaintiff exercised her religion in a manner substantially motivated by her religious beliefs, by offering to adopt the child if his birth parents could not parent him and their families did not adopt him and/or by taking other steps toward pursuing an adoption of him.

65. Defendants substantially burdened Plaintiff's exercise of her religion in violation of Idaho Code § 73-402, by one or more of the following actions:

   a. Coercing Plaintiff's free speech to convince the birth mother to disclose her pregnancy and birth to her parents;

   b. Coercing Plaintiff to withdraw her offer to adopt the child;

   c. Threatening to terminate Plaintiff's employment if she persisted in her offer to adopt the baby;

   d. Immediately removing Plaintiff from her job duties on or about May 25, 2022;

   e. Terminating Plaintiff's employment in or about May 2022; and/or

**COMPLAINT AND DEMAND FOR JURY TRIAL- 12**

    f.  Refusing to renew Plaintiff's Employment Contract for the 2022–2023 school year.

66. As a result, Plaintiff has incurred severe emotional distress and reputational and economic damages in an amount to be proven at a trial in this action.

67. Plaintiff seeks all available relief including actual damages, lost wages and benefits, compensatory damages, costs and attorney's fees, as well as appropriate declaratory and injunctive relief.

**THIRD CLAIM FOR RELIEF**
**(42 U.S.C. § 1983 Violation of the First Amendment)**
**(Against Defendant Thiros and Defendant Satterlee)**

68. The allegations contained in paragraphs 1 through 67 of this Complaint are incorporated herein by reference, as if set forth again in full.

69. Defendant Thiros and Defendant Satterlee are persons subject to suit within the meaning of 42 U.S.C. § 1983 who acted under color of state law in their actions and/or omissions alleged herein.

70. Plaintiff has constitutional rights to the free exercise of her religion and to free speech that are protected by the First Amendment of the U.S. Constitution.

71. Plaintiff exercised her First Amendment right to the free exercise of her Christian religion, by offering to adopt the child if his birth parents could not parent him or their families did not adopt him and/or by taking other steps toward pursuing an adoption of him.

72. Additionally, or in the alternative, Plaintiff engaged in constitutionally protected free speech rights under the First Amendment by objecting to Defendant's efforts to interfere with the birth mother's rights to privacy and autonomy to make her own decisions about her future and the future of her baby.

73. Defendant Thiros and/or Defendant Satterlee's actions interfered with Plaintiff's First Amendment rights to free exercise of her religion and/or free speech and/or retaliated against Plaintiff for exercising such constitutional rights, in violation of the First Amendment of the U.S. Constitution, by one or more of the following actions:

   a. Coercing Plaintiff's free speech to convince the birth mother to disclose her pregnancy and birth to her parents;

   b. Coercing Plaintiff to withdraw her offer to adopt the child;

   c. Threatening to terminate Plaintiff's employment if she persisted in her offer to adopt the baby;

   d. Immediately removing Plaintiff from her job duties on or about May 25, 2022;

   e. Terminating Plaintiff's employment in or about May 2022; and/or

   f. Refusing to renew Plaintiff's Employment Contract for the 2022–2023 school year.

74. As a result, Plaintiff has incurred severe emotional distress and reputational and economic damages in an amount to be proven at a trial in this action.

75. Plaintiff seeks all available relief including actual damages, lost wages and benefits, compensatory damages, costs and attorney's fees, as well as appropriate declaratory and injunctive relief.

## FOURTH CLAIM FOR RELIEF
**(42 U.S.C. § 1983 Violation of Substantive Due Process under the Fourteenth Amendment)**
**(Against Defendant Thiros and Defendant Satterlee)**

76. The allegations contained in paragraphs 1 through 75 of this Complaint are incorporated herein by reference, as if set forth again in full.

77. Defendant Thiros and Defendant Satterlee are persons subject to suit within the meaning of 42 U.S.C. § 1983 who acted under color of state law in their actions and/or omissions alleged herein.

78. Plaintiff has substantive due process right to intimate associations in her private family life that are protected by the Fourteenth Amendment of the U.S. Constitution and are enforceable under 42 U.S.C. § 1983.

79. Plaintiff exercised her substantive due process rights to parent and expand her family in an intimate familial association between the baby, Plaintiff, her husband and her family, by offering to adopt him and taking steps to pursue an adoption. Plaintiff and her husband Greg Wiggins assumed parental responsibilities for the baby while he was in the NICU including during his deteriorating health and through and until his death.

80. Neither Defendant Thiros nor Defendant Satterlee had legal authority under Idaho law or federal law to determine, regulate, or direct who should or should not adopt the baby boy.

81. Defendant Thiros and/or Defendant Satterlee wrongfully interfered with Plaintiff's exercise of her constitutional due process rights and/or retaliated against Plaintiff for exercising these constitutional rights, in violation of the Fourteenth Amendment of the U.S. Constitution, by one or more of the following actions:

    a. Coercing Plaintiff to withdraw her offer to adopt the child;

    b. Threatening to terminate Plaintiff's employment if she persisted in her offer to adopt the baby;

    c. Immediately removing Plaintiff from her job duties on or about May 25, 2022;

    d. Terminating Plaintiff's employment in or about May 2022; and/or

   e. Refusing to renew Plaintiff's Employment Contract for the 2022–2023 school year.

82. As a result, Plaintiff has incurred severe emotional distress and reputational and economic damages in an amount to be proven at a trial in this action.

83. Plaintiff seeks all available relief including actual damages, lost wages and benefits, compensatory damages, costs and attorney's fees, as well as appropriate declaratory and injunctive relief.

### FIFTH CLAIM FOR RELIEF
**(42 U.S.C. § 1983 Violation of Fourteenth Amendment Rights to Liberty)**
**(Against Defendant Thiros and Defendant Satterlee)**

84. The allegations contained in paragraphs 1 through 83 of this Complaint are incorporated herein by reference, as if set forth again in full.

85. Defendant Thiros and Defendant Satterlee are persons subject to suit within the meaning of 42 U.S.C. § 1983 who acted under color of state law in their actions and/or omissions alleged herein.

86. Plaintiff has a liberty interest in her good professional name and professional standing within the coaching profession of NCAA Division I college sports that is protected by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and is enforceable under 42 U.S.C. § 1983.

87. Defendant Thiros and/or Defendant Satterlee violated Plaintiff's federal due process rights to liberty by immediately removing Plaintiff from her job duties on or about May 25, 2022, by terminating Plaintiff's employment, by refusing to renew her Employment Contract, and/or on information and belief by directing, participating in, or ratifying Coach Rich's decision to falsely inform members of the Softball Team that Plaintiff had resigned her

employment, without providing Plaintiff advance notice and an opportunity to be heard in a name-clearing hearing where the decision makers have not prejudged the issues.

88. As a result, Plaintiff has incurred severe emotional distress and reputational and economic damages in an amount to be proven at a trial in this action.

89. Plaintiff seeks all available relief including actual damages, lost wages and benefits, compensatory damages, costs and attorney's fees, as well as appropriate declaratory and injunctive relief.

## SIXTH CLAIM FOR RELIEF
### (Violation of the Idaho Constitution)
### (Against All Defendants)

90. The allegations contained in paragraphs 1 through 89 of this Complaint are incorporated herein by reference, as if set forth again in full.

91. Plaintiff has constitutional rights guaranteed by Article I, Section 1, of the Idaho Constitution, to life and liberty, and to pursuing happiness and securing safety.

92. Plaintiff has constitutional rights guaranteed by Article I, Section 9, of the Idaho Constitution to freely speak on all subjects.

93. Plaintiff exercised her constitutional rights under Article I, Section 1, of the Idaho Constitution by offering to adopt the child and/or taking other steps toward adopting the child in accordance with the birth mother's wishes.

94. Additionally, or in the alternative, Plaintiff exercised her free speech rights under Article I, Section 9, of the Idaho Constitution by objecting to Defendant's interference in the birth mother's rights to autonomy and privacy in making her own decisions about her future and the future of her baby without interference or coercion by Defendants.

employment, without providing Plaintiff advance notice and an opportunity to be heard in a name-clearing hearing where the decision makers have not prejudged the issues.

88. As a result, Plaintiff has incurred severe emotional distress and reputational and economic damages in an amount to be proven at a trial in this action.

89. Plaintiff seeks all available relief including actual damages, lost wages and benefits, compensatory damages, costs and attorney's fees, as well as appropriate declaratory and injunctive relief.

## SIXTH CLAIM FOR RELIEF
### (Violation of the Idaho Constitution)
### (Against All Defendants)

90. The allegations contained in paragraphs 1 through 89 of this Complaint are incorporated herein by reference, as if set forth again in full.

91. Plaintiff has constitutional rights guaranteed by Article I, Section 1, of the Idaho Constitution, to life and liberty, and to pursuing happiness and securing safety.

92. Plaintiff has constitutional rights guaranteed by Article I, Section 9, of the Idaho Constitution to freely speak on all subjects.

93. Plaintiff exercised her constitutional rights under Article I, Section 1, of the Idaho Constitution by offering to adopt the child and/or taking other steps toward adopting the child in accordance with the birth mother's wishes.

94. Additionally, or in the alternative, Plaintiff exercised her free speech rights under Article I, Section 9, of the Idaho Constitution by objecting to Defendant's interference in the birth mother's rights to autonomy and privacy in making her own decisions about her future and the future of her baby without interference or coercion by Defendants.

95. Defendants interfered with Plaintiff's exercise of these constitutional rights, in violation of Article I, Section 1, and/or Article I, Section 9, of the Idaho Constitution, by one or more of the following actions:

   a. Coercing Plaintiff's free speech to convince the birth mother to disclose her pregnancy and birth to her parents;

   b. Coercing Plaintiff to withdraw her offer to adopt the child;

   c. Threatening to terminate Plaintiff's employment if she persisted in her offer to adopt the baby;

   d. Immediately removing Plaintiff from her job duties on or about May 25, 2022;

   e. Terminating Plaintiff's employment in or about May 2022; and/or

   f. Refusing to renew Plaintiff's Employment Contract for the 2022–2023 school year.

96. Additionally, or in the alternative, Plaintiff has a liberty interest in her good professional name and professional standing within the world of NCAA Division I college sports that is protected by Article I, Section 1, of the Idaho Constitution. However, Defendants violated Plaintiff's due process rights to liberty under Article I, Section 1, of the Idaho Constitution by immediately removing her from her job duties on or about May 25, 2022, by terminating Plaintiff's employment, by refusing to renew her Employment Contract, and/or on information and belief by directing, participating in, or ratifying Coach Rich's decision to falsely inform members of the Softball Team that Plaintiff had resigned her employment in abandonment of them, without providing Plaintiff notice and an opportunity to be heard in a name-clearing hearing where the decision makers have not prejudged the issues.

97. As a result, Plaintiff has incurred severe emotional distress and reputational and economic damages in an amount to be proven at a trial in this action.

98. Plaintiff seeks all available relief including actual damages, lost wages and benefits, compensatory damages, costs and attorney's fees, as well as appropriate declaratory and injunctive relief.

### SEVENTH CLAIM FOR RELIEF
**(Breach of Written Contract and/or the Implied Covenant of Good Faith and Fair Dealing)**
**(Against the Defendant University and the Defendant Board)**

99. The allegations contained in paragraphs 1 through 98 of this Complaint are incorporated herein by reference, as if set forth again in full.

100. Defendants hired Plaintiff as the Defendant University's Assistant Women's Softball Coach pursuant to a non-classified appointment to this position.

101. The Defendant Board's Policies and Procedures were incorporated in the terms of Plaintiff's Employment Contract with the Defendant University and/or were incorporated therein pursuant to an implied covenant of good faith and fair dealing in the Employment Contract.

102. Section II.F of the Idaho State Board of Education Governing Policies and Procedures is designed to benefit non-classified employees of the Defendant University by requiring that they 60 days advance notice of non-renewal of their employment contracts.

103. Section II.F of the Idaho State Board of Education Governing Policies and Procedures required the Defendant University to provide Plaintiff, as a non-classified employee, 60 days advance notice of the non-renewal of her Employment Contract.

104. The Defendant University and/or the Defendant Board failed to provide Plaintiff 60 days advance notice of the non-renewal of her Employment Contract.

105. In failing to provide Plaintiff 60 days advance notice of the non-renewal of her Employment Contract, the Defendant University and/or the Defendant Board violated Section II.F

of the Idaho State Board of Education Governing Policies and Procedures and breached the Employment Contract and/or the implied covenant of good faith and fair dealing in the Employment Contact.

106. As a result of this breach, Plaintiff has incurred economic and other consequential contract damages in an amount to be proven at a trial in this action.

107. Plaintiff seeks all available relief including actual damages, lost wages and benefits, compensatory damages, costs and attorney's fees, as well as appropriate declaratory relief and specific performance and/or injunctive relief.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all triable counts, claims and issues in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court award:

1. Entry of judgment in favor of Plaintiff and against Defendants;

2. Lost wages, benefits and all economic damages, compensatory (emotional distress) damages, and consequential damages to be determined at trial;

4. Declaratory, specific performance and/or injunctive relief;

6. Pre-judgment and post-judgment interest at the highest lawful rate;

7. Attorneys' fees and costs of this action, including expert witness fees; and

8. Such further relief as justice allows.

DATED this 17th day of November 2022.

MACMASTER LAW, PLLC

/s/ Emily A. MacMaster
Emily A. MacMaster
Attorneys for Plaintiff

**COMPLAINT AND DEMAND FOR JURY TRIAL- 20**